## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HUHTAMAKI, INC. and
FUTURE MOLD CORPORATION

       Plaintiffs,

                                Case No.

v.

INTERNATIONAL CONTAINER CORP.
and STEVEN F. MANLOVE, an individual,

       Defendants.

_____/

### VERIFIED COMPLAINT FOR DECLARATORY
### AND OTHER RELIEF AND DEMAND FOR TRIAL BY JURY

Plaintiffs Huhtamaki, Inc. and Future Mold Corporation, by and through their undersigned attorneys, for their Complaint for declaratory and other relief against Defendants International Container Corp. and Steven F. Manlove, state as follows:

### PARTIES

1.    Plaintiff Huhtamaki, Inc. ("Huhtamaki") is a Kansas corporation with its principal place of business at 9201 Packaging Drive, De Soto, Kansas 66018, with manufacturing operations located in Coleman, Michigan.

2.     Plaintiff Future Mold Corporation ("Future Mold") is a Michigan corporation with its principal place of business at 215 S. Webber St., Farwell, Michigan 48622.

3.     On information and belief, Defendant International Container Corp. ("ICC") is a Maryland corporation with its principal place of business at 7763 Old Telegraph Road, Severn, Maryland 21144.

4.     On information and belief, Defendant Steven F. Manlove ("Manlove"), an individual, is a Maryland resident with an address of 2212 Canteen Circle, Odenton, Maryland 21113, and is the President and CEO of ICC.

## JURISDICTION, AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1338(a), and 2201 because the claims for declaratory relief alleged in this Complaint arise under the patent laws of the United States, 35 U.S.C. §1 et. seq.

6.     This Court can enter the declaratory relief sought in this Complaint because this case presents an actual controversy within this Court's jurisdiction. 28 U.S.C. §§2201, 2202.

7.     Venue is proper in this judicial district because: (1) upon information and belief, Defendants do business in this judicial district, and (2) because a substantial part of the events or omissions giving rise to the claims in this case

occurred in this judicial district and a substantial part of the property that is the subject of this case is situated in this judicial district.  28 U.S.C. §1391(b).

## NATURE OF THE COMPLAINT

8.    In this action, Huhtamaki and Future Mold seek the Court's declaratory judgment that:  (1) Huhtamaki, Future Mold and certain of their products do not infringe any claims of United States Patent No. 6,086,800 (the "'800 Patent") asserted by ICC; and/or (2) the claims of the '800 Patent are invalid; and/or (3) the claims of the '800 Patent are unenforceable because Manlove committed inequitable conduct in the prosecution of the '800 Patent; and/or (4) Manlove is not the true inventor of the '800 Patent.

## FACTUAL BACKGROUND

9.    Future Mold is in the business of developing and manufacturing thermoforming tooling and lip rolling machines, and is a leader in the thermoforming design and tooling industry.

10.    Huhtamaki is a customer of Future Mold and is in the business of manufacturing consumer goods packaging and food service products.

11.    Huhtamaki uses certain Future Mold designed and manufactured thermoforming machinery to manufacture, among other things, plastic beverage cup lids.

*Future Mold's Invention*

12.    At least as early as March 1993, Melvin J. Otto ("Otto"), President of Future Mold, conceived of a thermoforming tool comprising a lid forming wheel containing a novel stripper mechanism to be used for producing plastic products (the "Future Mold Wheel").

13.    In May 1993, Future Mold made an offer to sell the Future Mold Wheel to a customer, Plastona Ltd. ("Plastona").

14.    In May 1993, Manlove learned of Otto's design for the Future Mold Wheel through consulting work he provided to Future Mold in connection with Future Mold's offer to sell the Future Mold Wheel to Plastona.

15.    During his consulting engagement with Future Mold, Manlove was shown a design plan created by Future Mold containing Otto's design for the Future Mold Wheel, which contained the novel stripper mechanism.  Manlove's contribution to the project was limited to providing the machinery that would hold the Future Mold Wheel, and other ancillary equipment, including the vacuum and temperature control system.  Manlove had no involvement in the development of the Future Mold Wheel itself or Otto's novel stripper mechanism.

16.    In April 1996, Future Mold manufactured and sold the Future Mold Wheel to Irwin International, Inc. ("Irwin") who incorporated it into machinery sold to Pacific Cup.

17.    A video depicting the operation of the Future Mold Wheel that was sold in April 1996 to Irwin was made in November 1996 in connection with the testing of the tooling for Pacific Cup, and was publicly shown to potential customers in 1997.

18.    In June 1997, the design of the Future Mold Wheel was displayed by Irwin at the Society of Plastic Industry's trade show, NPE, in Chicago, Illinois. The video showing the process of operation of the Future Mold Wheel was displayed at the June 1997 NPE trade show.

19.    Manlove attended the June 1997 NPE trade show and viewed the design of the Future Mold Wheel being displayed at Irwin's booth, where he also spoke with representatives from Irwin about the Future Mold Wheel.

*ICC's Patents*

20.    Knowing that Otto had invented the Future Mold Wheel in the spring of 1993 and that there had been a sale of the Future Mold Wheel in 1996, on February 23, 1998, Manlove filed the application that matured into the '800 Patent. [The '800 Patent is attached hereto as **Exhibit A**].  The '800 Patent is entitled "Thermoforming Process and Apparatus" and covers an apparatus and method for thermoforming plastic containers.  ICC is the assignee of the '800 Patent.  The '800 Patent was originally assigned to ICON Engineering ("ICON"), for which Manlove was also the President, and was subsequently assigned by ICON to ICC.

21.     The '800 Patent is a continuation-in-part of application Serial Number 08/312,090, filed September 26, 1994, now United States Patent No. 5,783,229 (the "'229 Patent") [attached hereto as **Exhibit B**], which is in turn a continuation-in-part of application Serial Number 08/266,564, filed June 28, 1994, now United States Patent No. 5,459,960 (the "'960 Patent") [attached hereto as **Exhibit C**], which is a continuation-in-part of application Serial Number 08/120,955 (the "'955 Application"), filed September 15, 1993, now abandoned.

22.     Manlove misappropriated the information disclosed to him by Otto in 1993 during the consulting engagement in connection with Future Mold's offer to sell the Future Mold Wheel to Plastona, and sought to obtain protection for such information in his patent application for the '229 Patent, and subsequently in the application for the '800 Patent.  The claims ultimately allowed in the '800 Patent, specifically claims 1, 3, and 13, include the misappropriated information from Otto.

23.     The limitations contained in independent claim 1 of the '800 Patent that were invented by Otto include: (1) "said mold facets being comprised of a static upper mold facet section and a dynamic lower mold facet section, said dynamic lower mold facet section containing said mold cavity;" (2) "an ejection shoe;" and (3) "means for actuating and guiding movement of said dynamic lower

mold facet section towards said forming wheel axle at a predetermined ejecting sector during rotation of said forming wheel."

24.    The limitations contained in independent claim 3 of the '800 Patent that were invented by Otto include: (1) "providing a forming wheel comprised of a plurality of mold facets, each said mold facet being comprised of a static upper mold facet section and a dynamic lower mold facet section and said mold facet containing at least one mold cavity;" and (2) "actuating and guiding movement of said dynamic lower mold facet section toward said forming wheel axis when the means for actuating and guiding comes into contact with a stationary ejection shoe during rotation of said forming wheel."

25.    The limitations contained in independent claim 13 of the '800 Patent that were invented by Otto include: (1) "providing a forming wheel that includes a plurality of mold facets, each of said mold facets including a static upper mold facet section and a dynamic lower mold facet section, each such said dynamic lower mold facet section containing a mold cavity;" and (2) "actuating the dynamic lower mold facet section towards the forming wheel axis when the mold facet reaches a predetermined ejecting sector."

26.    The '229 Patent is entitled "Thermoforming Process and Apparatus" and contains a single apparatus claim directed to an apparatus for thermoforming plastic containers.

27.    Manlove filed the application that matured into the '229 Patent on September 26, 1994 knowing that Otto had invented the Future Mold Wheel in the spring of 1993.  The '229 Patent also was a continuation-in-part of the '960 Patent and claimed priority to the '955 Application.   The single apparatus claim in the '229 Patent includes the information misappropriated from Otto.  The limitations contained in the sole claim of the '229 Patent that were invented by Otto include: (1) "said mold facets being comprised of a static upper mold facet section and a dynamic lower mold facet section;" (2) "said dynamic lower mold facet section containing said mold cavity;" (3) "a stationary ejection shoe;" and (4) a means for actuating and guiding movement of said dynamic lower mold facet section towards said forming wheel axle when the means for actuating and guiding comes into contact with said stationary election shoe during rotation of said forming wheel."

28.    The '960 Patent is entitled "Nursery Container" and covers a nursery container providing an improved root structure for plants intended to be transplanted in the ground and contains one independent apparatus claim and two dependent apparatus claims.

29.    The '955 Application is entitled "Plant Growing Container and Method of Manufacturing Said Container," and was abandoned prior to being published.

30.    The '960 Patent covers a completely different invention from the "Thermoforming Process and Apparatus" in the '229 Patent and the '800 Patent. None of the claims in either the '229 Patent or the '800 Patent are supported by the disclosure of the '960 Patent, nor does either the '229 Patent or the '800 Patent repeat any portion of the '970 Patent whatsoever.

31.    During the prosecution of the application for the '229 Patent, Manlove attempted to expedite his application for the '229 Patent through a Petition to Make Special Under 37 C.F.R. 1.102(c) and MPEP 708.02 dated February 28, 1995 claiming that the invention "will materially contribute to the conservation of energy resources and costs" and "enhance the quality of the environment."  The United States Patent and Trademark Office (the "PTO") denied that petition for the failure to contain an affidavit or declaration as required by the MPEP explaining how the invention "materially contributes to (1) the discovery or development of energy resources, or (2) the more efficient utilization and conservation of energy resources."  Decision on Petition to Make Special Under 37 C.F.R. 1.102(c) dated March 31, 1995.  Manlove did not attempt to overcome the PTO's denial of the petition.

32.    Manlove also made numerous references to "pending infringing litigation" in an effort to demonstrate to the PTO the need for expeditious

processing of his application in petitions to overcome an abandonment, and ultimately claimed:

> It is respectfully pointed out to the Commissioner and to the Examiner, that during the pendency of this application, inventor Manlove had been in contact with certain entities who, to Manlove's dismay, have copied and recently published the same thermoforming process invented by Manlove and sought to be protected by the same in the instant application (See Attachment G). The immediate revival and allowance of the instant application is thus critical at this time.

Verified Statement in Support of Petition to Revive an Unintentionally Abandoned Patent Application Under 37 C.F.R. 1.137(b) at p. 3, dated April 22, 1997.

33.     In connection with the prosecution of the '800 Patent, in response to a Notice to File Missing Parts of Application issued by the PTO on December 9, 1998 indicating that the oath or declaration was missing, Manlove filed declarations on January 2, 1999, signed by Manlove personally and not his patent attorney, claiming priority to the '229 Patent, the '960 Patent, and the '955 Application, and declaring the truth of the statements in the declaration under penalty of fine and/or imprisonment:

Under the Paperwork Reduction Act of 1995, no ... ns are required to respond to a collection of information or ...

Patent and Trademark O...
U.S. DEPARTMENT OF COMMERCE
... contains a valid OMB control number.

# DECLARATION

I hereby claim the benefit under Title 35, United States Code §120 or any United States application(s), or §365(c) of any PCT international application designating the United States of America, listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States or PCT international application in the manner provided by the first paragraph of Title 35, United States Code §112, I acknowledge the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations §1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application.

| U.S. Parent Application Number | PCT Parent Number | Parent Filing Date (MM/DD/YYYY) | Parent Patent Number (if applicable) |
|---|---|---|---|
| THIS APPL IS CIP of 08/312,090 | | 9/26/94 | |
| CIP of 08/244,564 | | 6/24/94 | |
| CIP of 08/120,955 | | 9/15/93 | |

☐ Additional U.S. or PCT International application numbers are listed on a supplemental priority sheet attached hereto.

As a named inventor, I hereby appoint the following registered practitioner(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

| Name | Registration Number | Name | Registration Number |
|---|---|---|---|
| MICHAEL MALININGZI | 30 774 | | |
| JACK SCHWARTZ | 34 721 | | |

☐ Additional registered practitioner(s) named on a supplemental sheet attached hereto.

Direct all correspondence to:

| | |
|---|---|
| Name | MICHAEL MALINANGZI, Gg. / JACK SCHWARZ Eg |
| Address | MGM & ASSOCIATES |
| Address | Suite 23  244 E 86 STREET |
| City | NEW YORK  State NY  ZIP 10025 |
| Country | Telephone 212 288 3477 Fax 212 396 0073 |

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Name of Sole or First Inventor: ☐ A petition has been filed for this unsigned inventor

| Given Name | STEVEN | Middle Initial | F. | Family Name | MANLOVE | Suffix e.g. Jr. | |

| Inventor's Signature | S.F.Mar | Date | 2-17-98 |

| Residence: City | ODENTON | State (MD) Country | ANTIGRUNDEL X | Citizenship | U.S. |

| Post Office Address | 2212 CANTEEN CIRCLE |

| Post Office Address | |

| City | ODENTON | State MD | Zip | 2113 | Country | U.S. |

☐ Additional inventors are being named on supplemental sheet(s) attached hereto

11

34.   On September 21, 1999, the PTO issued an Office Action rejecting the claims of the application for the '800 Patent and finding that Manlove had not complied with "one or more conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120." In that Office Action, the Examiner stated that if the applicant desired priority based upon a previously co-pending application, the applicant was obligated to include a specific reference to the earlier filed application in the application for the '800 Patent.

35.   In an amendment filed in response to the September 21, 1999 Office Action, Manlove, knowing that the '960 Patent did not support the claims in the '229 Patent application or the '800 Patent application, specifically and intentionally addressed the deficiency raised by the Examiner with respect to priority date by inserting the following language claiming priority to the unrelated '960 Patent and to the '955 Application:

Page 3, lines 1-2 please insert immediately below "Background of the Invention"] --This is a continuation in part of Application S.N. 312,090, filed September 26, 1994, now U.S. Patent 5,783,229, which is in turn a continuation in part of Application S.N. 266,564, filed June 28, 1994, now U.S. Patent 5,459,960, which is a continuation in part of Application S.N. 120,955, filed September 15, 1993, now abandoned.--

Amendment to Application Serial No. 09/164,493 p. 2 dated 1/10/2000.

### *ICC's Assertion of Patent Infringement*

36.   On July 30, 2013, ICC's attorney, Martin G. Belisario, sent a letter to Huhtamaki accusing it of infringing the '800 Patent and offering to license the '800

Patent "on reasonable terms."   In the letter ICC's counsel references "the two retracting flat lid rotary thermoforming systems built by the predecessor of today's Thermoforming Systems, LLC used by Huhtamaki" as the basis for the alleged infringement.

37.   On March 11, 2014, counsel for Future Mold responded to ICC's infringement notice by advising ICC that the '800 Patent was expired and unenforceable and pointing out:

a)  The '800 Patent expired September 15, 2013;

b)   The '800 Patent is invalid for failing to identify Otto as the inventor;

c)   The '800 Patent is unenforceable as a result of Manlove's inequitable conduct in falsely omitting Otto as an inventor and for falsely claiming priority to the '960 Patent; and

d)   The '800 Patent is invalid due to the on-sale bar because the technology covered by it was offered for sale and sold by Future Mold prior to the critical date of both the '800 Patent and the '229 Patent.

38.   On March 27, 2014, ICC's attorney responded to Future Mold's March 11, 2014 letter admitting that the '800 Patent expired on September 15, 2013, but denying the allegations regarding incorrect inventorship and inequitable

conduct.  ICC also admitted that a sale of the machine allegedly covered by the '800 Patent occurred more than a year before the '800 patent was filed.

39.    On April 16, 2014, Future Mold's counsel responded to ICC's March 27th letter advising that ICC has no claim for past damages due to the lack of notice or marking prior to the time Huhtamaki ceased using the challenged technology due to a redesign by Future Mold prior to the date of the initial infringement notice letter and declining to provide evidence of incorrect inventorship and inequitable conduct because Manlove was well aware of the facts providing the basis for such allegations.  Future Mold concluded by noting that ICC's admission of a first sale date of August 1996 more than one year before the filing date of the '800 Patent is additional proof that the '800 Patent was invalid *ab initio*.

40.    On April 30, 2014, rather than respond to Future Mold's April 16th letter, ICC instead filed suit against Huhtamaki Inc., a Delaware corporation, in the District of Delaware, *International Container Corp. v Huhtamaki Inc.*, Case No. 1:14-cv-00567 (D. Del.) (the "ICC Litigation"), alleging infringement of claims 1, 2, 3, 11, 12, 13 and 14 of the '800 Patent.  The complaint has not yet been served on Huhtamaki.  The Delaware corporation named as the defendant by ICC in the ICC Litigation is not the corporate entity that purchased and used the Future Mold Wheel.  Rather, Plaintiff Huhtamaki, a Kansas corporation, is the entity that is a

customer of Future Mold.  Accordingly, ICC named the wrong party in the ICC Litigation.

41.    As a consequence of ICC's assertions of infringement, an actual controversy presently exists between Future Mold and Huhtamaki on the one hand and ICC and Manlove on the other as to the invalidity, unenforceability and infringement of the '800 Patent.

## COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT
(Against Defendant ICC only)

42.    Plaintiffs incorporate by reference paragraphs 1 through 41 above as if fully set forth herein.

43.    Plaintiffs are entitled to a declaratory judgment that claims 1, 2, 3, 11, 12, 13 and 14 of the '800 Patent are not infringed by Future Mold, Huhtamaki, their products or the manufacture, use, sale or offering for sale thereof.

## COUNT II
## DECLARATORY JUDGMENT OF INVALIDITY – PRIOR ART/SALE
(Against Defendant ICC only)

44.    Plaintiffs incorporate by reference paragraphs 1 through 43 above as if fully set forth herein.

45.    More than one year prior to the filing of the application for the '800 Patent, the alleged invention was known, used, offered for sale and sold by Future Mold, and possibly others, in the United States.  Accordingly, the '800 Patent is

invalid because the alleged invention fails to satisfy the conditions for patentability specified in 35 U.S.C. § 102.

46.    In addition, the '800 Patent is invalid because the alleged invention fails to satisfy the conditions for patentability specified in 35 U.S.C. §§ 103 and/or 112.

**COUNT III**
**DECLARATORY JUDGMENT**
**OF INVALIDITY - INCORRECT INVENTORSHIP**
(Against Defendant ICC only)

47.    Plaintiffs incorporate by reference paragraphs 1 through 46 above as if fully set forth herein.

48.    Manlove did not invent the subject matter patented in the '800 Patent, nor did he make any invention or discovery, either novel, original, or otherwise, within the meaning of Title 35 of the United States Code.

49.    Therefore, the '800 Patent is invalid for failing to name the correct inventor.

**COUNT IV**
**CORRECTION OF INVENTORSHIP**
(Against Defendant ICC only)

50.    Plaintiffs incorporate by reference paragraphs 1 through 49 above as if fully set forth herein.

51.     Pursuant to 35 U.S.C. § 256(b), Plaintiffs are entitled to the issuance of an order by this Court directing the Director of the PTO to correct the '800 Patent to name Otto as the inventor.

## COUNT V
## DECLARATORY JUDGMENT OF UNENFORCEABILITY –
## INEQUITABLE CONDUCT AS TO INVENTORSHIP
(Against Defendants ICC and Manlove)

52.     Plaintiffs incorporate by reference paragraphs 1 through 51 above as if fully set forth herein.

53.     Knowing that the novel independent claim limitations in the '229 Patent and the '800 Patent related to a stripping mechanism invented by Otto (see ¶¶ 22 – 25, 27 above), Manlove filed his application for the '229 Patent initially, and subsequently the '800 Patent for the same invention naming only himself as the sole inventor, thereby withholding from the PTO the material information that he was not the sole inventor of the alleged invention.

54.     The withheld information related to inventorship was material and not cumulative because, unless corrected, incorrect inventorship renders a patent invalid.

55.     Manlove deliberately and intentionally omitted naming Otto as the inventor or co-inventor with an intent to deceive the PTO so that he could misappropriate Otto's invention and assert infringement of the alleged invention

against Future Mold's customers, including Huhtamaki, and others and to profit generally off the monopoly granted in the '229 Patent and the '800 Patent.

56.   Manlove's attempts to expedite prosecution of his application for the '229 Patent on the basis of environmental factors that were never properly demonstrated to the PTO and his references in the prosecution history for the '229 Patent to "pending infringement litigation" in an effort to revive the application further evidence an intent to deceive the PTO because they demonstrate his knowledge that others were claiming ownership to his alleged invention.

57.   Because Manlove withheld material information about the correct inventor of the alleged invention in the '800 Patent with an intent to deceive the PTO, Plaintiffs are entitled to a declaratory judgment that the '800 Patent is unenforceable due to Manlove's inequitable conduct.

**COUNT VI**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY –**
**INEQUITABLE CONDUCT AS TO PRIORITY DATE**
(Against Defendants ICC and Manlove)

58.   Plaintiffs incorporate by reference paragraphs 1 through 57 above as if fully set forth herein.

59.   To claim the benefit of an earlier filing date, an applicant of a continuation-in-part application must meet the conditions of 35 U.S.C. § 120 and 37 C.F.R. 1.78(a)(1)-(a)(3).   The claims in the continuation-in-part application claiming the benefit of the earlier filing date must be supported by the disclosure in

the prior application.  In addition, the continuation-in-part application must repeat a substantial portion of the prior application.

60.    While a continuation-in-part application may include matter not disclosed in the prior filed application, only the claims of the continuation-in-part that were disclosed in the prior application are entitled to the benefit of the filing date of the prior application.

61.    Knowing that Otto had invented the Future Mold Wheel more than one year prior to the filing of the application for the '229 Patent and the '800 Patent, Manlove submitted materially false information to the PTO in claiming priority to the unrelated '960 Patent and the '955 Application.

62.    Because Manlove claimed he was the sole inventor of the '960 Patent, Manlove knew or should have known that none of the claims in the '229 Patent or the '800 Patent were supported in any way by the '960 Patent.  Nevertheless, Manlove deliberately claimed priority to the '960 Patent and the '955 Application in his applications for the '229 Patent and the '800 Patent, making at least two specific representations that the '800 Patent was entitled to the priority date of the '960 Patent and the '955 Application as a continuation-in-part application.

63.    A claim for priority is inherently material to patentability because a priority date may determine validity of the application and resulting patent at issue. In particular, Manlove knew that Otto invented the Future Mold Wheel prior to the

19

critical dates of both the '800 Patent and the '229 Patent (see ¶¶ 14-15 above) and admitted that the Future Mold Wheel had been sold by Future Mold prior to the critical date of the '800 Patent (see ¶¶ 38-39 above).

64.     Nevertheless, Manlove sought to obtain the benefit of the earliest priority date of the '955 Application despite knowing that the inventions disclosed in the '800 Patent and the '229 Patent were not disclosed at all in at least the '960 Patent (the '955 Application not having been published).  Had Manlove been truthful in connection with his claim of priority, he would have been obligated to disclose the Future Mold Wheel to the PTO, which reference the PTO would have considered important in deciding whether to allow the application for the '800 Patent.  That the PTO would have considered the Future Mold Wheel important in its examination of Manlove's application for the '800 Patent is evident from Manlove's assertion of infringement against Huhtamaki for Huhtamaki's use of the Future Mold Wheel.

65.     Manlove deliberately and intentionally misrepresented that the '800 Patent was entitled to claim priority to the '960 Patent and the '955 Application with an intent to deceive the PTO so that he could avoid having to disclose the Future Mold Wheel to the PTO as prior art, which disclosure Manlove knew would have resulted in a rejection of the '800 Patent.  This misrepresentation coupled with his willful omission of Otto as an inventor along with his claims in connection

with attempting to expedite his application for the '229 Patent demonstrate that Manlove intended to deceive the PTO so he could misappropriate Otto's invention as his own.

66.     Because Manlove intentionally misrepresented that the '800 Patent was entitled to claim priority to the '960 Patent and the '955 Application with an intent to deceive the PTO, Plaintiffs are entitled to a declaratory judgment that the '800 Patent is unenforceable due to Manlove's inequitable conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Huhtamaki, Inc. and Future Mold Corporation respectfully request:

A.     A Declaratory Judgment that they are not liable for directly or contributorily infringing or inducing infringement, of any valid, enforceable claim of the '800 Patent;

B.     A Declaratory Judgment that each and every claim of the '800 Patent is invalid;

C.     An order directing the Director of the PTO to correct the '800 Patent to name Melvin J. Otto as the inventor;

D.     A Declaratory Judgment that the claims of the '800 Patent are unenforceable due to Manlove's inequitable conduct;

E.     An order directing ICC and Manlove to disgorge to Future Mold any profits resulting from the licensing, assignment or any other assertion of the '800 Patent that resulted in remuneration;

F.     A Declaratory Judgment that ICC is not entitled to any damages in any action by ICC against Huhtamaki for infringement of the '800 Patent;

G.     An award of costs in this case;

H.     A declaration that this case is exceptional under 35 U.S.C. §285 and an award to Huhtamaki and Future Mold of all attorneys' fees incurred; and

I.     Such other and further relief that is just and proper under the circumstances.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury on all claims and issues so triable.

Respectfully submitted,

RADER, FISHMAN & GRAUER PLLC

Dated:  July 7, 2014

/s/ Douglas P. LaLone (P45751)
Douglas P. LaLone (P45751)
Lisa Rycus Mikalonis (P39485)
*Attorneys for Plaintiffs*
39533 Woodward Avenue, Ste. 140
Bloomfield Hills, MI  48304
Tel: (248) 594-0600
Fax: (248) 594-0610
dpl@raderfishman.com
lrm@raderfishman.com

## **VERIFICATION**

MELVIN J. ("JOE") OTTO, being first duly sworn deposes and says:

(1)    I am the President of Future Mold Corporation.

(2)    I have carefully read the *Verified Complaint for Declaratory and Other Relief and Demand for Trial by Jury.*

(3)    The facts set forth in the *Verified Complaint for Declaratory and Other Relief and Demand for Trial by Jury* are true and correct based on my own personal knowledge.

(4)    If called as a witness, I am competent to testify to those facts.

Further affiant saith not.

Melvin J. ("Joe") Otto

Subscribed and sworn before me
this 7 day of July 2014

Notary Public, Clare County, Michigan

My Commission Expires: 1-28-2019

> VICKIE L DYSINGER
> Notary Public, State of Michigan
> County of Clare
> My Commission Expires Jan. 28, 2019
> Acting in the County of Clare

24

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2014, I electronically filed the foregoing paper with the Clerk of the United States District Court, Eastern District of Michigan, using the CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ Douglas P. LaLone (P45751)
Douglas P. LaLone (P45751)
RADER, FISHMAN & GRAUER PLLC
*Attorneys for Plaintiffs*
39533 Woodward Avenue
Bloomfield Hills, MI  48304
dpl@raderfishman.com